**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA**

                                         **05 Cr. 495 (JGK)**

    - against -                        **MEMORANDUM OPINION**
                                             **AND ORDER**

**RAMON MORALES et al.,**

                **Defendants.**
_____

**JOHN G. KOELTL, District Judge:**

The defendant Ramon Morales ("Morales") has moved to suppress evidence seized on March 16, 2005 and April 28, 2005.[1] Morales was arrested without a warrant on March 16, 2005 and heroin and cash were seized from his person. Morales was arrested again on April 28, 2005, also without a warrant, and on that day heroin was seized from his car. After he allegedly consented to a search of his home orally and in writing, cash and other items were found in a search of Morales's home. An evidentiary hearing was held on May 23, 2006, and the Court now makes the following findings of fact and reaches the following conclusions of law.

---

[1] Morales had also moved for a severance but withdrew that motion by letter dated March 27, 2006.

1

**I.**

Beginning in about November 2004, the New York Drug Enforcement Task Force ("DETF") conducted an investigation of Jaime Londono ("Londono") and others. The investigation included court-ordered wire intercepts of Londono and others with whom he dealt, including Morales. (Tr. 4-5.) Based on information obtained from surveillance and the wire intercepts, the DETF seized multiple kilogram quantities of heroin. (Tr. 6.) The agents responded to locations that Londono or his associates were directed to go to receive the drugs. (Tr. 6.) Morales communicated with Londono regularly concerning the purchase of drugs and the payment for those drugs. (Tr. 7, 10-38; Gov't Exs. 20-42.)

Between about December 15, 2004 and the defendant's arrest on March 16, 2005, DETF agents intercepted telephone calls between Londono and Morales, Londono and his associates (Luis Orozco-Castano and Edison Belalcazar), Morales and Belalcazar, and Morales and customers relating to the sale of narcotics and the payment for the drugs. (Tr. at 10-38; Gov't Exs. 20-42.) In particular, in a series of telephone calls from shortly after noon until about 4:30 p.m. on March 16, 2005, Londono, Orozco-Castanos, Belalcazar, and Morales discussed two quantities of narcotics to be delivered to Morales and payment by Morales, and Belalcazar going to Morales' home on behalf of Londono in

connection with the transaction. (Id.) When Belalcazar was in the neighborhood, Belalcazar warned Morales about a "gray car" which in fact turned out to be surveillance by law enforcement agents. (Tr. 35; Gov't Ex. 38.) While these conversations were occurring, Morales received a telephone call from a potential customer and agreed to a quick sale through his car window. (Tr. 30; Gov't Ex. 30.) Subsequently, Morales had conversations with an unidentified male to set up a meeting in person. Thereafter the unidentified male called Morales to tell Morales to come back because Morales had given him the wrong thing. (Tr. 36-38; Gov't Exs. 39-42.)

As a result of the investigation, agents conducted physical surveillance of the defendant's residence at 1331 St. Lawrence Avenue, Bronx, New York. (Tr. 81-82.) New York State Police investigator Muharem Hasan ("Investigator Hasan"), who was assigned to the DETF, was instructed that there was probable cause to arrest Morales, but that his task was to conduct surveillance and, if he saw Morales carrying something or acting in a strange way, to approach him. (Tr. 82-83, 90, 93.) Special Agent Richard Walsh of the DETF ("Agent Walsh") and Detectives Ray Lange and Ronnie Brown were also conducting surveillance of Morales and Investigator Hasan was in frequent communication with them, particularly whenever Morales moved his location. (Tr. 83.) Investigator Hasan observed Morales walking

very cautiously, looking around, looking to the side of him, looking behind him, walking in a "strange way, trying to like conceal something." (Tr. 84.) Investigator Hasan then approached Morales. Investigator Hasan candidly admitted that when he approached Morales, Morales was not free to leave and he considered him to be detained. (Tr. 96.) He saw Morales reach inside his jacket and ordered him to take his hand out of the pocket. Morales complied, but as the investigator approached, Morales put his hand back into the pocket and the officer physically grabbed that hand and took it out of the pocket. (Tr. 84-85, 93) Investigator Hasan looked into the pocket for his safety and saw a tinfoil in which heroin was found. (Tr. 86, 94.) The investigator also found glassine envelopes filled with heroin in the pocket and a patdown search found a large quantity of cash in the defendant's socks. (Tr. 87.) Morales was arrested. (Tr. 87, 94.)

On April 28, 2005, Agent Walsh received information from a confidential informant who had provided substantial reliable information in the past. (Tr. 40-41, 60-61, 66-71.) In particular, the confidential informant provided information leading to several other arrests and the seizure of kilogram quantities of heroin. (Tr. 60-61, 66-71.) The only demonstrably unreliable information provided by the confidential informant in the past was that the confidential informant

initially advised that a transaction was to occur on April 27, 2005, which in fact occurred on April 28, 2005, as detailed below. (Tr. 69.) In addition, the confidential informant was a participant in the drug trafficking and worked with Londono in various capacities. (Tr. 69-70.)

On April 28, 2005, the confidential informant informed Agent Walsh that the confidential informant was supposed to drive Londono to the Bronx to make a delivery of 500 grams of heroin to Morales. (Tr. 41.) Based on this information, agents set up surveillance at Morales's residence. Agents observed Morales arrive in his car and thereafter the confidential informant's car arrived. (Tr. 41, 103.) Agent Walsh saw Londono leave the confidential informant's car and enter Morales's car. Shortly thereafter, the confidential informant called Agent Walsh and told him that Londono was meeting with Morales and that Londono might ask the informant to bring narcotics over. (Tr. 41-42.) Thereafter, Agent Walsh observed the confidential informant leave Morales's car and walk to the confidential informant's car. After the confidential informant left Morales's car, he called Agent Walsh and told him that he had delivered the narcotics to Morales. (Tr. 42, 102.) Agent Walsh then instructed other agents to move in and arrest Morales. (Tr. 42, 103, 112.)

While Morales was in his car, several agents approached, with guns drawn, identified themselves and arrested Morales. Agents grabbed Morales out of the car and holstered their weapons. (Tr. 104, 103, 112.) Special Agent Marlo Luna ("Agent Luna") asked Morales in Spanish for his consent to search the vehicle and Morales agreed, although Agent Luna testified candidly that he would have searched the car even in the absence of the consent. (Tr. 105, 113.) The agents searched the vehicle and seized a pouch containing glassine envelopes filled with heroin from behind the visor on the driver's side of the vehicle and a bag with heroin on the back seat of the car. (Tr. 105-06.)

Morales was placed in Agent Walsh's car. Special Agent Forget read Morales his Miranda rights in Spanish. Morales indicated that he was aware of his rights and waived them. Agent Walsh asked Morales for consent to search his home and he verbally consented. Morales then signed a consent form written in Spanish, giving consent to search his residence. The form was witnessed by both Agents Walsh and Forget. (Tr. 34-44; Gov't Ex. 10.) At the time he signed the form, Morales was not in handcuffs. The only officers present were Agents Walsh and Forget, and they did not have their guns drawn. There is no evidence that the agents pressured Morales into signing the form. The agents used a normal tone of voice and Morales was

calm and lucid. (Tr. 47-48.) The defendant has submitted an affidavit asserting that he "never consented to the search of my apartment at 1331 St. Lawrence Avenue, Bronx, New York." (Affidavit of Ramon Morales sworn to March 16, 2006, ¶ 3.) However, Morales does not explain away the written consent to search form or detail any circumstances indicating that his consent was not given voluntarily.

Agents searched Morales and recovered a cellular telephone. (Tr. 49.) Morales accompanied agents to his home, where they conducted a search. Morales did not want his wife to come in during the search and be startled. (Tr. 77.) The agents seized approximately $40,000 in cash and other items. (Tr. 49-52; Gov't Exs. 6-7.)

**II.**

**A.**

Based on telephone calls and surveillance, law enforcement officers had probable cause on March 16, 2005 to believe that Morales was violating the federal narcotics laws. Therefore they had probable cause to arrest him and to search him incident to that arrest.

"Probable cause is a practical, non-technical concept. To establish probable cause, one need not make a prima facie showing of criminal activity nor demonstrate that it is more

7

probable than not that a crime has been or is being committed." United States v. Ginsberg, 758 F.2d 823, 828 (2d Cir. 1985) (internal citations and quotation marks omitted). Probable cause to arrest exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983). "The fact that an innocent explanation may be consistent with the facts as alleged, however, does not negate probable cause." United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985). Probable cause is assessed from the perspective of "a reasonable and prudent officer in light of his training and experience." United States v. Moreno, 897 F.2d 26, 31 (2d Cir. 1990) (internal quotation omitted).

Once law enforcement officers had probable cause to arrest Morales, they were permitted to conduct a warrantless search of his person incident to the lawful arrest. See New York v. Belton, 453 U.S. 454, 457 (1981); United States v. Robinson, 414 U.S. 218, 224 (1973). It is immaterial if the search occurs before the defendant is formally arrested. See Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) ("Where the formal arrest follows quickly on the heels of the challenged search of

8

petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."); United States v. Donaldson, 793 F.2d 498, 502-03 (2d Cir. 1986) (same).

In this case, at the time of the defendant's arrest, law enforcement officials had ample probable cause to believe that Morales had engaged in violations of the federal narcotics laws. Based on the evidence discussed above, law enforcement officials had probable cause to believe that Morales paid money to Londono for drugs that were then distributed. In the court-authorized interceptions law enforcement officials heard Londono and Morales discuss what they reasonably believed to be the payment of money for drugs. They heard numerous calls on March 16, 2005 involving Londono, Morales, Orozco-Castanos and Belalcazar discussing setting up a meeting between Belalcazar and Morales in connection with a drug transaction. Law enforcement officers could also reasonably have found significant that Belalcazar warned Morales about the possible presence of surveillance in a gray car. Moreover, Morales engaged in conversations with potential customers.

Based on the totality of the circumstances, law enforcement officials had probable cause to arrest Morales at the time that Investigator Hasan approached Morales on March 16, 2005. Therefore, his arrest of Morales was supported by probable cause

9

and the search of Morales was a search incident to a lawful arrest. Therefore, the seizure of heroin and money from Morales did not violate of Morales's constitutional right under the Fourth Amendment to be free from unreasonable searches and seizures. The motion to suppress the evidence seized from Morales on March 16, 2005 is therefore **denied**.

**B.**

On April 28, 2005, based on the detailed information provided by the confidential informant which was corroborated by surveillance, law enforcement agents had probable cause to believe that Morales had received a delivery of 500 grams of heroin in his car. The confidential informant had provided reliable information in the past and his reliability was enhanced by the fact that he had firsthand knowledge of the drug organization. Under the circumstances, law enforcement officers had ample probable cause to arrest Morales and, as explained above, to conduct a lawful search of his person incident to that arrest. Therefore the cellphone seized from Morales was lawfully seized and should not be suppressed.

The search of the automobile was also constitutional. Pursuant to the "automobile exception" to the Fourth Amendment warrant requirement, "law enforcement officials may conduct a warrantless search of a movable vehicle when they have probable cause to believe it contains contraband or evidence of a crime."

United States v. Vassilou, 820 F.2d 28, 30 (2d Cir. 1987); see also Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam); California v. Carney, 471 U.S. 386, 390-93 (1985). Furthermore, "when the police possess probable cause to believe a vehicle contains contraband, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages in the vehicle." United States v. Gagnon, 373 F.3d 230, 235 (2d Cir. 2004) (internal citation and quotation marks omitted); United States v. Ross, 456 U.S. 798, 824-25 (1982).

Probable cause exists "where the facts and circumstances within ... [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched." United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004) (internal citation and quotation marks omitted); see also Gagnon, 373 F.3d at 236. The standard does not demand certainty, but only a "fair probability" that contraband or evidence of a crime will be found. Gaskin, 364 F.3d at 457. Probable cause is judged through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training. Id. In assessing probable cause based on information provided in whole or in part by a confidential

informant, a court should consider the informant's veracity, reliability, and basis for knowledge, as well as whether the information is corroborated by independent police investigation. Gagnon, 373 F.3d at 235-36.

In this case there was more than ample probable cause to believe that, on April 28, 2005, Morales's car contained evidence of a crime, namely heroin, and that there was therefore probable cause to search that car. The information provided by the confidential informant on that date was consistent with the information that the agents previously had that Morales obtained heroin from Londono. The confidential informant had provided reliable information in the past. The confidential informant provided first hand information based on his personal participation in assisting Londono in providing heroin to Morales. The confidential informant provided detailed information about the transaction that was to occur and then provided detailed information that the heroin had been provided to Morales in his vehicle. The confidential informant's description of the events was corroborated by the officers' contemporaneous observations of the events.

Based on the totality of the circumstances, there was more than ample probable cause to believe that Morales's vehicle contained the heroin that the confidential informant advised had just been delivered to Morales. There was thus probable cause

to search the automobile and the search was consistent with the Fourth Amendment.  Therefore, the motion to suppress the evidence seized in that search is **denied**.

### C.

The evidence seized from Morales's apartment on April 28, 2005 should not be suppressed because Morales knowingly and voluntarily consented to the search of his home on that date.

While a warrantless search of a home is generally unreasonable and in violation of the Fourth Amendment, "an individual may consent to a search, thereby rendering it reasonable." United States v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995).  "To ascertain whether consent is valid, courts examine the totality of the circumstances to determine whether the consent was a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority."  Id. (internal citation and quotation marks omitted); accord United States v. Arango-Correa, 851 F.2d 54, 57 (2d Cir. 1988).  The voluntariness of a consent to search is a question of fact to be determined from all of the surrounding circumstances.  Garcia, 56 F.3d at 422.

In this case, the Government has proved that Morales's consent to search was in fact voluntarily given.  At the time of the consent to search, Morales had been read his Miranda rights. He was in a police car, but he was not handcuffed.  There were

13

only two officers present and the officers' guns were not drawn. The consent was obtained without extensive questioning and Morales signed a consent to search form after it had been read to him. There is no indication in the record that Morales suffered from any lack of intelligence or was pressured, overtly or indirectly, into consenting to the search of his home, both orally and in writing. Morales accompanied the agents on the search of his home to avoid surprising his wife. There is no indication that he attempted to withdraw his consent in any way. While Morales asserts in his affidavit that he did not consent to the search, he does not explain his written consent to search and he provides no evidence that the consent was not voluntarily given.

Under the totality of the circumstances, the Government has proved that Morales voluntarily consented to the search of his home on April 28, 2005. The motion to suppress the evidence found in Morales's home on April 28, 2005 is therefore **denied**.

CONCLUSION

For the reasons explained above, the motion to suppress is **denied**.

SO ORDERED.

Dated: New York, New York
August 11, 2006

_____
John G. Koeltl
United States District Judge