**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------

**UNITED STATES OF AMERICA,**

       - against -

**RAMON MORALES,**

            **Defendant.**
------------------------------------------------

**05 Cr. 495 (JGK)**

<u>**OPINION AND ORDER**</u>

**JOHN G. KOELTL, District Judge:**

On March 13, 2007, the jury in this case returned a verdict finding the defendant, Ramon Morales, guilty of both counts of a two-count indictment. Count One charged that from in or about 2003 up to and including April 2005, Morales conspired with others in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute one kilogram and more of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A). Count Two charged that on or about April 28, 2005 Morales possessed with intent to distribute 500 grams and more of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B).[1] Morales now moves for a judgment of acquittal notwithstanding the jury verdict pursuant to Federal Rule of Criminal Procedure

---

[1] The jury also answered special interrogatories and found that the conspiracy charged in Count One involved one kilogram or more of heroin, the minimum required for the enhanced sentencing levels in 21 U.S.C. § 841(b)(1)(A), and that with respect to Count Two, the defendant possessed with intent to distribute 100 grams or more of heroin, the minimum amount required for the enhanced sentencing levels in 21 U.S.C. § 841(b)(1)(B).

1

29(c)[2] and for a new trial pursuant to Rule 33.  For the reasons that follow, the motions are **denied**.

**I.**

**A.**

Morales first contends that the evidence was insufficient to support the jury verdict and hence that the Court should enter a judgment of acquittal pursuant to Rule 29(c).  A defendant "bears a very heavy burden" in challenging the sufficiency of the evidence.  United States v. Desena, 287 F.3d 170, 177 (2d Cir. 2002); see also United States v. Macklin, 927 F.2d 1272, 1277 (2d Cir. 1991) (collecting Second Circuit cases).  The defendant must show that "no rational trier of fact, viewing the evidence in the light most favorable to the government, could have found him guilty beyond a reasonable doubt of the essential elements of the crimes charged."  Desena, 287 F.3d 170, 176-77 (2d Cir. 2002) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).

In considering the sufficiency of the evidence, the Court must "view the evidence presented in the light most favorable to the government, and . . . draw all reasonable inferences in its

---

[2] Morales previously moved for a judgment of acquittal pursuant to Rule 29(a) at the close of the Government's case and renewed the motion after the defense rested, and the Court in each instance denied the motion.  (See Tr. 432-33, 472-73.)

favor." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000); see also United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999).  The Court must analyze the pieces of evidence "not in isolation but in conjunction," United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994), and must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others," Guadagna, 183 F.3d at 130.

"[T]o avoid usurping the role of the jury," the Court must "not substitute [its] own determinations of credibility or relative weight of the evidence for that of the jury."  Autuori, 212 F.3d at 114 (citation omitted).  Thus, the Court must "defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998). "[T]he jury's verdict may be based entirely on circumstantial evidence."  United States v. Martinez, 54 F.3d 1040, 1043 (2d Cir. 1995); see also United States v. Aleskerova, 300 F.3d 286, 292-93 (2d Cir. 2002) (elements of conspiracy can be established by circumstantial evidence); Macklin, 927 F.2d at 1277 (same).

B.

To the extent that Morales also moves for a new trial pursuant to Rule 33 based on an alleged insufficiency of the evidence, the standard is also an exacting one.  A court will grant a new trial only "in the most extraordinary circumstances."  United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993) (citing United States v. Imran, 964 F.2d 1313, 1318 (2d Cir. 1992)).  In evaluating the sufficiency of the evidence for purposes of Rule 33, the Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation."  United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001).  "There must be a real concern that an innocent person may have been convicted."  Id. (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)).  While the Court has "broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," it must nonetheless "exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'"  Id. (quoting Sanchez, 969 F.2d at 1414).

C.

Morales argues that the evidence was insufficient to support his conviction for several reasons, including that it did not suggest he had "physical contact" with the heroin found

4

in his car, that the Government did not call as a trial witness the confidential informant who placed the heroin under Morales' car seat prior to his arrest on April 28, 2005, and that the cooperating witnesses Lenny Jimenez and Edinson Belalcazar were admitted liars whose testimony was without corroboration.  The evidence presented at trial and summarized below, however, was more than sufficient to support the jury's verdict.

   Special Agent Richard Walsh of the Drug Enforcement Administration ("DEA") testified that immediately prior to Morales's arrest on April 28, 2005, Special Agent Walsh observed first Jaime Londono, and then a confidential informant who was a "trusted member" of Londono's organization, approach Morales while he sat in his car near his residence in the Bronx.  (Tr. 182-84.)  After the informant left Morales's car, he telephoned Special Agent Walsh.  (Tr. 184, 202-03.)  Under Special Agent Walsh's direction, a team of agents moved in and arrested Morales.  (Tr. 184-85.)  DEA Special Agent Marlow Luna testified that he searched Morales's car and found glassine envelopes inside a black pouch in the driver's side sun visor that contained what the parties stipulated was approximately 1.9 grams of heroin.  (Tr. 408-09; Gov't Ex. ("GX") 904.)  DEA Special Agent Matthew O'Brien testified that he found underneath the front passenger seat a large Ziploc bag containing smaller

5

bags holding what the parties stipulated was approximately 498.4 grams of heroin.  (Tr. 419-21; GX 904.)

Special Agent Walsh testified that after Morales was arrested on April 28, 2005, Morales consented to a search of his residence, where agents found approximately $40,000 in cash packaged in bundles with rubber bands and sealed inside a plastic bag.  (Tr. 185-88.)  Special Agent Luna testified that he participated in the search of Morales's apartment and that he found a bag containing an off-white powdery substance, which Special Agent Walsh identified as "cut," or a cutting agent.  (Tr. 412-13, 186-89.)  Special Agent Walsh also testified that after Morales's arrest on April 28, 2005, Morales said he had received heroin from a Columbian male named "Jimmy" on three or four occasions and that "Jimmy" had brought the money the agents found in Morales's apartment to Morales on the previous day.  (Tr. 191-92.)  The Government introduced into evidence the heroin and the "cut" seized from Morales's car and residence on April 28, 2005, as well as photos of the $40,000 cash.  (GXs 101-106.)

The evidence showed that Morales had been arrested in possession of heroin a previous time on March 16, 2005.  New York State Police Trooper Muharem Hasan testified that on that date, he and other officers were conducting surveillance near Morales's residence.  (Tr. 397-98.)  When Trooper Hasan

6

approached Morales on the street with his police shield in view, Morales reached into his upper left jacket pocket. (Tr. 399.) Trooper Hasan searched the pocket and found several small packages or "decks" of heroin, and a more thorough search revealed more than $1,000 in cash concealed in Morales's socks and a black pouch containing additional decks of heroin in the sun visor of Morales's car. (Tr. 399-402.) The parties stipulated that the heroin Trooper Hasan found weighed approximately 9.5 grams, and the Government introduced the seized heroin into evidence.[3] (GXs 903, 100.)

The Government also presented testimony from two cooperating witnesses, Lenny Jimenez and Edinson Belalcazar, who testified that they worked for Londono in connection with his business of distributing hundreds of kilograms of heroin. Jimenez testified that after first working as a drug courier, for a time he delivered heroin to Londono's customers and picked up money from those customers to pay for the heroin. (Tr. 48-57, 60-66.) Jimenez identified Morales as a customer whom he knew by the names "Ray" or "Abuelo," and he testified that he met with Morales many times per week either to deliver heroin or to pick up money. (Tr. 65-66, 84.) Specifically, Jimenez said

---

[3] A prior opinion of the Court denied Morales's motion to suppress evidence seized pursuant to his arrests on March 16, 2005 and April 28, 2005. See United States v. Morales, 05 Cr. 495, 2006 WL 2380393 (S.D.N.Y. Aug. 11, 2006).

7

he delivered to Morales approximately one kilogram of heroin--sometimes more, sometimes less--packaged in 100 gram quantities in sandwich bags placed inside a larger Ziploc bag about once per week.  (Tr. 84-87.)  Jimenez met with Morales several other times per week to pick up money, ranging in amounts from $1,000 to $20,000 or $30,000 packaged in thousand-dollar bundles bound with rubber bands.  (Tr. 84-85, 87-89.)  Jimenez testified that he arranged meetings with Morales by cell phone, and that he saved Morales's number in the address book of his own cell phone, which was introduced into evidence.  (Tr. 94-98; GX 50.) Jimenez was arrested on June 1, 2004, and he testified pursuant to a cooperation agreement with the Government.  (Tr. 51, 79-81; GX 3501-M.)  On cross examination, Jimenez admitted having lied to the Government about the involvement of his brother-in-law in the conspiracy.  (Tr. 77-78, 114-15.)

Belalcazar's testimony showed that he played a role similar to that of Jimenez in Londono's organization after Jimenez's arrest.  Belalcazar testified that he first worked as a drug courier, and then after Jimenez's arrest in 2004 he began to deliver heroin to and pick up money from Londono's customers. (Tr. 214-17, 222-33.)  Belalcazar identified Morales in court as a steady customer whom he knew by the nickname "El Viejo."  (Tr. 233-34.)  Belalcazar testified that he typically delivered between 200 and 500 grams of heroin to Morales three or four

8

times per month, and he remembered delivering one kilogram of heroin on two occasions. (Tr. 255.) Belalcazar also said he met Morales three or four additional times per month to pick up money--typically between $10,000 and $25,000--to pay for the heroin deliveries. (Tr. 252, 257-58.) The descriptions Belalcazar gave of how the heroin he delivered was packaged and how the money he picked up from Morales was bundled were consistent with those given by Jimenez, and Belalcazar also said he set up meetings with Morales by cell phone using a number for Morales provided by Londono. (<u>See</u> Tr. 255, 257-60, 282-83.) Belalcazar testified that he witnessed Londono making phone calls to Morales, and he indicated that they used feminine code words such as Spanish words for "the black one" and "the blonde one" to refer to heroin. (Tr. 286-88.)

During Belalcazar's examination, the Government played audio recordings of more than twenty telephone calls that had been intercepted during the DEA's court-authorized wiretaps on cell phones used by Londono and Morales. Belalcazar testified that he recognized the voices of Londono and Morales in many of these calls, and he also identified his own voice in several calls between himself and Morales and Morales's voice in three conversations between Morales and unidentified male speakers, which the jury could reasonably have concluded were conversations between Morales and his customers. (Tr. 297-336.)

9

Transcripts of these calls, including English translations, were admitted into evidence pursuant to a stipulation. (Tr. 296; GX 900.) In the calls, at various times Londono and Morales used some of the code words that Belalcazar had said referred to heroin, such as "the blonde one" or "the dark-skinned girl," as well as other words that a rational trier of fact could infer were codes for heroin or money. (See, e.g., GXs 701-T, 711-T, 501-T, 403-T.)

Belalcazar was arrested in late July 2005, and like Jimenez he testified pursuant to a cooperation agreement with the Government. (Tr. 241, 248-50, 336-37; GX 3502B.) Belalcazar admitted that he had been untruthful in failing to tell the Government about the number of trips he had made to Texas as a drug courier for the Londono organization, that he had violated a previous term of probation, and that he had lied in connection with his application for the return of money that was seized in Texas and subject to forfeiture proceedings. (Tr. 244, 246, 357, 359-61.)

Morales's argument that no evidence put him in "physical contact" with the 500.3 grams of heroin seized from his car on April 28, 2005 is without merit because a rational juror could conclude that an informant delivered heroin to Morales in his car on that date, that the delivery was in keeping with a lengthy course of dealings between Morales and Londono, that

Morales used his cell phone to set up regular heroin deliveries and to speak to his own customers, that DEA agents found the drugs in Morales's car at the time of his arrest, and that Morales possessed that heroin at the time of his arrest.  See United States v. Tussa, 816 F.2d 58, 63-64 (2d Cir. 1987) (evidence was sufficient to sustain conviction for heroin possession and conspiracy where, among other things, the defendant waited in a parked car for a delivery, and a bag containing heroin was placed on the back seat; it "was not necessary for [the defendant] actually to have touched the . . . heroin . . . to have been found guilty of possession of heroin"); see also United States v. Lopez, 477 F.3d 1110, 1113-14 (9th Cir. 2007) (affirming conviction for possession of cocaine where cocaine was found in the defendant's car within his reach and other evidence linked the defendant to drug activity).  This evidence was more than sufficient to support the conviction on Count Two, and, together with the extensive evidence relating to the activities of Londono's organization and Morales's participation in that organization, it supports the conviction on Count One as well.

Defense counsel thoroughly cross-examined the cooperating witnesses Jimenez and Belalcazar on any inconsistencies in their testimony, on their previous untruthfulness in talks with law enforcement officials, and on any motivation for untruthfulness

11

potentially caused by their testifying pursuant to cooperation agreements. The cooperating witnesses' testimony was corroborated in a variety of ways during the trial. Numerous intercepted telephone calls corroborated the testimony that Morales received heroin from Londono in exchange for money. The heroin found in Morales's car on April 28, 2005 and the money found in his residence were packaged in exactly the way that both cooperating witnesses described in connection with their regular dealings with Morales and with the Londono organization more generally. The details the witnesses provided about the way they set up meetings with Morales, the frequency and location of their trips to meet him, the amounts of heroin Morales received, and the amounts of money they collected were consistent. Moreover, the Government introduced additional testimony from law enforcement officers as well as physical evidence that corroborated details of the Londono organization's activities provided by Jiminez and Belalcazar. A rational trier of fact therefore could easily find sufficient corroboration of the cooperating witnesses' testimony in the evidence presented at trial to credit their testimony. Moreover, the credibility of the cooperating witnesses was for the jury to decide.

Finally, the Government's decision not to call the confidential informant who delivered the package of heroin to Morales in his car on April 28, 2005 provides no basis for the

current motion.  The Government is allowed to decide which evidence it chooses to present, and the defendant had the opportunity to subpoena the confidential informant if he believed his testimony would have been useful, and to seek the Court's assistance if there was any problem.  The Government represents that if the defendant had asked to have the informant produced at trial, the Government would have produced him, but the defendant made no such request.  Similarly, Morales's effort to list "missing" evidence, such as telephone conversations relating to the April 28, 2005 arrest or fingerprint analyses, does not undermine the very substantial evidence that the Government did present at trial.

Viewing the evidence in the light most favorable to the Government, the Court cannot find that no rational trier of fact could have concluded that every element of each count was proved beyond a reasonable doubt.  Similarly, taking into account all the facts and circumstances of the case and making an objective assessment, there is no basis to grant a new trial.  Neither a judgment of acquittal nor a new trial is justified based on Morales's challenge to the sufficiency of the evidence.

## II.

Morales also argues that the jury charge was erroneous because it permitted the jury to convict on Count One if the

jury unanimously found that the conspiracy had either one of the two objects stated in the Superceding Indictment, namely, distribution <u>or</u> possession with the intent to distribute one kilogram or more of heroin.  The Superceding Indictment charged Morales and others with conspiring to violate the narcotics laws and charged that it was "a part and an object of the conspiracy" that the defendants "unlawfully, intentionally, and knowingly would and did distribute, <u>and</u> possess with intent to distribute, a controlled substance, to wit, 1 kilogram and more of mixtures and substances containing a detectable amount of heroin." (Superceding Indictment ¶¶ 1-2 (emphasis added).)  The jury was instructed that, if it found that a conspiracy existed and that the conspiracy had either of the two charged objects, the illegal purpose element would be satisfied; however, if the jury did not find beyond a reasonable doubt that both objects were proven, then the jury must be unanimous as to the object the jury did find.[4]  Morales contends that this jury instruction

---

[4] The specific charge was as follows:
   Although there are two objects charged in the Indictment, the Government need not prove both objects beyond a reasonable doubt. An agreement to accomplish either of these objectives is sufficient.  If the Government fails to prove that at least one of the objectives set forth in Count One of the Indictment was an objective of the conspiracy in which the defendant participated, then you must find the defendant not guilty of Count One of the Indictment.
   However, if you find that a conspiracy existed, and that the conspiracy had <u>either</u> of the two charged objects, namely, the distribution of heroin, <u>or</u> the possession of heroin with the intent to distribute it, the illegal purpose element will be satisfied.  I note that if you do not find beyond a reasonable doubt that both objects were proven, you must be unanimous as to

amounted to an amendment of the Superceding Indictment in violation of the Grand Jury Clause of the Fifth Amendment.

The argument has no merit. It is well established that where an indictment uses the conjunctive "and" rather than the disjunctive "or" in stating the objects of a conspiracy, a unanimous finding that one object is proved beyond a reasonable doubt is sufficient.[5] See United States v. Coriaty, 300 F.3d 244, 250 (2d Cir. 2002) (quoting United States v. Rioux, 97 F.3d 648, 661 (2d Cir. 1996)) ("The rule that a jury's guilty verdict on a conjunctively worded indictment stands if the evidence is sufficient with respect to any of the acts charged, 'obviously extends to a trial court's jury instructions in the disjunctive in the context of a conjunctively worded indictment.'"); see also Turner v. United States, 396 U.S. 398, 420 & n.42 (1970) (collecting cases); United States v. Cioffi, 487 F.2d 492, 499 (2d Cir. 1973); cf. 3 Hon. Leonard B. Sand et al., Modern Federal Jury Instructions--Criminal Instruction 56-9 & cmt. (2006) (explaining that a jury need not find both distribution

---

       the object you do find. That is, you must all be in agreement
       with respect to at least one of the two alleged objects of the
       conspiracy.
(Tr. 585.)

[5] It is also settled in this circuit that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for [t]he conspiracy is the crime and that is one, however diverse its objects." United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992) (internal quotation marks omitted) (quoting United States v. Murray, 618 F.2d 892, 896 (2d Cir. 1980)).

and possession with intent to distribute to find a violation of 21 U.S.C. § 841(a)). Morales has cited no authority to the contrary. Because the jury charge did not "so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment," United States v. Mucciante, 21 F.3d 1228, 1233 (2d Cir. 1994) (quoting United States v. Mollica, 849 F.2d 723, 729 (2d Cir. 1988)), there is no basis for Morales's argument that the jury charge constructively amended the Superceding Indictment in which he was charged.

## CONCLUSION

Because neither Morales's challenge to the sufficiency of the evidence nor his suggestion of an erroneous jury charge provides any basis to disturb the jury's verdict on either count, Morales's motions for a judgment of acquittal pursuant to Rule 29(c) and for a new trial pursuant to Rule 33 are both **denied**.

**SO ORDERED.**

Dated:   New York, New York
         June 16, 2007

                                              _____
                                                    John G. Koeltl
                                              United States District Judge

16